

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                            Case No. 12-Cr-189

NICOLE TALSKY,

    Defendant.

## PLEA AGREEMENT

1. The United States of America, by its attorneys, James L. Santelle, United States Attorney for the Eastern District of Wisconsin, and Erica N. O'Neil and Margaret B. Honrath, Assistant United States Attorneys, and the defendant, Nicole Talsky, individually and by attorney Amelia L. Bizzaro, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in a one count indictment, which alleges a violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846. The defendant has also been charged in a one-count information, which alleges a violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846.

3. The defendant has read and fully understands the charge contained in the indictment and information. She fully understands the nature and elements of the crimes with which she has been charged, and the charge and the terms and conditions of the plea agreement have been fully explained to her by her attorney.

4. The defendant voluntarily agrees to waive prosecution by indictment in open court.

5. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

## INFORMATION
### THE UNITED STATES ATTORNEY CHARGES:

1. Beginning sometime in 2010, and continuing until on or about August 31, 2012, in the State and Eastern District of Wisconsin and elsewhere,

**NICOLE TALSKY,**

knowingly and intentionally conspired with persons known and unknown to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

2. The offense involved 500 grams or more of a mixture and substance containing cocaine, a Schedule II controlled substance; 28 grams or more of a mixture and substance containing cocaine base, in the form of "crack" cocaine, a Schedule II controlled substance; and 100 grams or more of a mixture or substance containing heroin, a Schedule I controlled substance.

All in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B), and Title 18, United States Code, Section 2.

6. The defendant acknowledges, understands, and agrees that she is, in fact, guilty of the offense described in paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment A beyond a reasonable doubt. This showing would be made based on the testimony of informants, cooperating co-conspirators, law enforcement officers, and citizen witnesses. The evidence would also include consensual recordings, documents, physical evidence obtained as a result of search warrants, traffic stops and arrests, pen/trap/toll analyses, wiretap monitoring, and physical surveillance. The defendant admits that these facts are true and correct and establish her guilt beyond a reasonable doubt. This information is provided for the purpose of setting forth a factual

2

basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: forty years and $5,000,000. The count also carries a mandatory minimum of five years of imprisonment, a mandatory special assessment of $100, at least four years of supervised release, and a maximum life term of supervised release. The parties further recognize that a restitution order may be entered by the court.

8. The defendant acknowledges, understands, and agrees that she has discussed the relevant statutes as well as the applicable sentencing guidelines with her attorney, including any possibility that the defendant may qualify as a career offender under the sentencing guidelines.

## DISMISSAL OF INDICTMENT

9. The government agrees to move to dismiss the indictment as against this defendant at the time of sentencing.

## PROOF OF DRUG WEIGHT FOR STATUTORY MAXIMUM PENALTY

10. The parties understand and agree that for the penalties in 21 U.S.C. § 841(b)(1)(B) to apply, as provided in paragraph 7 above, the government must prove beyond a reasonable doubt that the offense to which the defendant is pleading guilty involved at least 500 grams of cocaine, a Schedule II controlled substance, or 28 grams of crack cocaine, a Schedule II controlled substance. The defendant agrees that the government possesses sufficient, admissible evidence to meet this burden.

3

## ELEMENTS

11.     The parties understand and agree that in order to sustain the charge of conspiracy to distribute a controlled substance as set forth in the information, the government must prove each of the following propositions beyond a reasonable doubt:

> First, that the conspiracy as charged in the information existed, and
> Second, that the defendant knowingly became a member of the conspiracy with an intention to further the conspiracy.

## SENTENCING PROVISIONS

12.     The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

13.     The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

14.     The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 5. The defendant acknowledges and agrees that her attorney in turn has discussed the applicable sentencing guidelines provisions with her to the defendant's satisfaction.

15.     The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal

4

history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

16. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

17. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

18. The parties agree to recommend to the sentencing court that the relevant conduct attributable to the defendant is at least 500 grams but less than two kilograms of a mixture and substance containing cocaine, a Schedule II controlled substance.

5

### Base Offense Level

19. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in the information is 26 under Sentencing Guidelines Manual § 2D1.1(c)(7).

### Role Adjustment

20. Pursuant to Sentencing Guidelines Manual § 3B1.2, the government agrees to recommend to the sentencing court that a two-level decrease be given for mitigating role in the offense, as the defendant was a minor participant.

### Safety Valve

21. The government agrees that if the defendant otherwise qualifies for the limitation on applicability of statutory minimum sentences under 18 U.S.C. § 3553(f), the government will not object to its application and will recommend a sentence consistent with Sentencing Guidelines Manual § 5C1.2.

### Acceptance of Responsibility

22. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of her intention to enter a plea of guilty.

## Sentencing Recommendations

23. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

24. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

25. The government agrees to recommend a sentence within the applicable sentencing guideline range, as determined by the court.

## Court's Determinations at Sentencing

26. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

27. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

28. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

29. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form. The defendant further agrees, upon request of FLU whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

### Special Assessment

30. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

### Forfeiture

31. The defendant agrees that all properties listed in the indictment, information, and bill of particulars constitute the proceeds of the offense to which she is pleading guilty, or were used to facilitate such offense. The defendant agrees to the forfeiture of these properties and to the immediate entry of a preliminary order of forfeiture. The defendant agrees that she has an

8

interest in each of the listed properties. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement.

## DEFENDANT'S COOPERATION

32. The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, and to testify truthfully and completely before the grand jury and at any subsequent trials or proceedings, if asked to do so. The government agrees to advise the sentencing judge of the nature and extent of the defendant's cooperation. The parties acknowledge, understand and agree that if the defendant provides substantial assistance to the government in the investigation or prosecution of others, the government, in its discretion, may recommend a downward departure from: (a) the applicable sentencing guideline range; (b) any applicable statutory mandatory minimum; or (c) both. The defendant acknowledges and understands that the court will make its own determination regarding the appropriateness and extent to which such cooperation should affect the sentence.

### Further Civil or Administrative Action

33. The defendant acknowledges, understands, and agrees that the defendant has discussed with her attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

34. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

35. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

36. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

37. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

### Further Action by Internal Revenue Service

38. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the indictment.

### EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

39. The defendant acknowledges and understands if she violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to

appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of her breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and her attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that she continues to be subject to the terms of the proffer letter.

## **VOLUNTARINESS OF DEFENDANT'S PLEA**

40. The defendant acknowledges, understands, and agrees that she will plead guilty freely and voluntarily because she is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

11

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 9/30/2013

*Nicole Talsky*
NICOLE TALSKY
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 9/30/2013

*Amelia Bizzaro*
AMELIA L. BIZZARO
Attorney for Defendant

For the United States of America:

Date: 10/4/13

*James L. Santelle*
JAMES L. SANTELLE
United States Attorney

Date: 10/4/2013

*Margaret B. Honrath*
MARGARET B. HONRATH
ERICA N. O'NEIL
Assistant United States Attorneys

12

# ATTACHMENT A

## The Steven Jones Drug Trafficking Conspiracy

Had this case proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt. These facts are based upon court-authorized wire interceptions, information provided by confidential informants, the anticipated testimony of numerous cooperating defendants and law enforcement agents, electronic surveillance, and physical evidence seized throughout the investigation of the conspiracy. This information is provided for the purpose of setting forth a factual basis for the defendant's guilty plea. It is not a full recitation of the defendant's knowledge of, or participation in, these offenses.

## Overview

In 2010, case agents began an investigation into the drug-trafficking activities of **Steven Jones** and his co-conspirators, many of whom are his relatives or close friends, based on information obtained from multiple confidential sources who identified **Steven Jones** and **Getharia Smith** as significant cocaine traffickers.

The investigation revealed that **Steven Jones**, who has been a large-scale cocaine trafficker in the Milwaukee area since 1996, conspired with others: (1) to obtain multi-kilogram quantities of cocaine on a regular basis from suppliers in and around Rockford, Illinois, Houston, Texas, and Milwaukee, Wisconsin; (2) to obtain large amounts of heroin from a Milwaukee source of supply; and (3) to distribute the drugs in and around Milwaukee, Wisconsin. Steven **Jones** worked with family members and close friends to assist with the drug distribution operation. The conspiracy continued until the majority of the membership was arrested on or about August 31, 2012. Each member knowingly and intentionally joined the conspiracy with the intent of furthering its goal of distributing controlled substances.

Court-authorized telephone intercepts, telephone records, physical surveillance, and

source information establish that the Steven Jones Drug Trafficking Organization (DTO) distributed large quantities of cocaine in the Milwaukee area and was routinely receiving kilogram and multi-kilogram shipments of cocaine. **Devon Chase Cole**, **Jose Duran**, and several unindicted individuals served as the conspiracy's cocaine suppliers.

**Steven Jones** and **Getharia Smith** maintained continuing relationships with their sources of supply, who anticipated and relied upon repeated transactions. Since the supply and distribution of controlled substances is nothing like a legitimate retail operation, it is vital for traffickers to develop reliable sources of supply and reliable downstream distributors to whom they can repeatedly turn to sustain their trafficking activities. The sources supplied the DTO with drugs in standardized transactions, whereby **Steven Jones** and **Getharia Smith** communicated with the source to set up a meeting, which generally occurred in Milwaukee, Rockford, Illinois, or Houston, Texas. A DTO member then traveled to the meet spot, often times the source of supply's residence, with large amounts of cash and returned to Milwaukee with distribution quantities of cocaine and heroin.

Upon returning to the Milwaukee, **Steven Jones** and **Getharia Smith** arranged for the drugs to be stored in various locations, including **Steven Jones's** business, the J-Spot Restaurant, and the homes of **Jessica Talsky** and **Tiffany Martinez**. **Steven Jones** and **Getharia Smith** then contacted their customers and alerted them that cocaine was available for sale. **Steven Jones** not only stored cocaine and heroin at the J-Spot Restaurant, but he also used the business location as a distribution point for his drugs. Because of the conspirators' close personal relationships, and their interest in the success of the DTO, conspirators advised each other on the conduct of their business and assisted each other in establishing reliable distribution routines. The conspirators warned each other of the presence of law enforcement and established ways to

2

avoid police detection, including using police scanners and surveillance cameras.

### Wiretap Investigation, Controlled Buys and Post-Indictment Evidence

Beginning on May 24, 2009, case agents began court-authorized monitoring of the wire communications to and from a telephone used by **Getharia Smith**. Case agents monitored **Getharia Smith's** telephone calls between the following dates: May 24 and June 22, 2012; June 26 and July 12, 2012; and August 13 and August 31, 2012.

Case agents monitored the cellular telephone used by **Steven Jones** between June 25 and July 20, 2012, and August 13 and August 31, 2012.

During the intercepted calls, the conspirators discussed drug-trafficking activities, including the procurement and sale of cocaine, heroin, and marijuana; the conspirators' searched for back-up suppliers when their usual suppliers were unavailable or without supply; and made arrangements to expand the scope their drug-trafficking activities in Milwaukee.

Between July 2011 and January 2012, case agents supervised several controlled buys of cocaine and cocaine base between confidential sources and the conspirators.

### Nicole Talsky

**Nicole Talsky** is an associate of **Steven Jones**. **Steven Jones** employed **Talsky** at his restaurant, the J-Spot. **Nicole Talsky** assisted **Steven Jones** in the distribution of controlled substances at the J-Spot and other locations. At **Steven Jones'** direction, **Nicole Talsky** would look for people she thought were members of law enforcement parked near the J-Spot and report back to **Jones. Jones** would use this information to conduct counter surveillance for him and other members of the DTO. On at least one occasion, **Nicole Talsky** traveled to Rockford, Illinois with **Steven Jones** at his direction so that **Jones** could purchase drugs. At the time, **Nicole Talsky** knew the trip was to purchase drugs but didn't know what type or how much. On

3

that trip, **Steven Jones** purchased a kilogram of cocaine from **Devon Chase Cole.**

On another occasion, **Nicole Talsky** accompanied **Getharia Smith** and **Steven Jones** to Texas. At the time, she knew the trip was to facilitate the purchase of drugs but didn't know what type or how much. During that trip, **Steven Jones** and **Getharia Smith** purchased kilogram-sized quantities of cocaine. **Nicole Talsky** accompanied **Getharia Smith** on the trip from Texas to Milwaukee with the cocaine in the trunk. Upon returning to Milwaukee, **Getharia Smith** provided the cocaine to **Steven Jones.**

**Nicole Talsky** "middled" quarter and half-ounce cocaine deals for **Oliver Jones, Steven Jones,** and their customers. **Nicole Talsky** would obtain the money from the customer, provide the money to **Oliver Jones** or **Steven Jones**, obtain the cocaine from **Oliver Jones** or **Steven Jones**, and deliver the cocaine to the customer. **Nicole Talsky** also purchased ounce quantities of cocaine and used cocaine on a regular basis.

Conservatively estimated, **Nicole Talsky** is responsible for the distribution of more than 500 grams but less than 2 kilograms of cocaine.

4